### C. Pierson v. The State.

No. 7172.    Decided January 17, 1923.

**Assault to Murder—Insufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence was insufficient to sustain the conviction, the judgment must be reversed and the cause remanded.

Appeal from the District Court of Galveston. Tried below before the Honorable J. C. Canty.

Appeal from a conviction of assault with intent to murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*O. S. York,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for an assault with intent to murder; punishment fixed at confinement in the penitentiary for a period of fifteen years.

The alleged injured party was one, Skinner, who was a carpenter and was working upon a window of a building, upon which building two negroes named Starks and Pierson were working on the roof. Starks offended Skinner by sweeping some dirt in the window. Some insulting language was interchanged and Skinner went out through another window and up on the roof at the invitation of Starks, and carried with him, according to his statement, a piece of cement in his hand and a hammer in his pocket. Starks had obtained a piece of timber called a "straight-edge." He made a demonstration with it and Skinner threw the cement at him. Starks then advanced and the hammer was thrown by Skinner. The appellant interfered and pushed Skinner in the direction of Starks and Starks hit Skinner on the arm with the straight-edge. A struggle between the three ensued and the appellant cut Skinner with a knife in six different places. Parties interfered and the fight was discontinued.

Starks testified that the quarrel was begun by Skinner using insulting language and attacking him with the hammer; that he picked up a board for protection, and Skinner threw the hammer and was advancing when Starks struck him with the board. He claimed that he struck Skinner but one time, and that the board was the one which Skinner had used in the beginning of the fight. Starks testified that he did not know how Pierson became engaged in the affray.

Touching the fight, another workman on the building said that Skinner was working when an argument started over some dirt being swept into the room where he (Skinner) was working; that Starks dared Skinner to come out and finish the fight; that Skinner went out and the next thing that the witness knew, he heard some one holler from below that they were cutting Skinner; that he looked and saw Skinner lying on his back and kicking at Pierson; that the witness' impression was that Pierson had nothing to do with the beginning of the fight, but that when he (the witness) reached the parties, Pierson was attacking Skinner with a knife and Starks was striking him with a board. Pierson was reluctant to surrender his knife. The knife was a common pocketknife, "not real long bladed."

Pierson testified that the trouble began in harsh words being used between Skinner and Starks and that Skinner picked up a piece of timber and tried to hit Starks and said: "You black s—n of a b—h; I will fix you;" that Skinner came out with a handful of bricks in one arm and his hammer in the other; that he came to the parties and

threw the hammer at Starks; that he missed him and then began to throw the bricks; that afterwards he grabbed a scantling and began to strike Starks when Pierson walked up and asked him to stop and tried to catch the piece of timber which Skinner was using when Skinner struck him with it; that Skinner also kicked Pierson in the stomach; that Pierson then drew his knife and cut Skinner on the arm and he kicked him again. Starks, in the meantime was trying to get hold of the stick. Skinner was fighting them both.

There was no previous acquaintance between the parties. Skinner exhibited his scars to the jury, though they are not described in the statement of facts. The fight occurred on the 2nd day of January. Skinner was first taken to the hospital and his wounds stitched up. Afterwards he was taken to his home, and some of his wounds began to bleed and the doctor was called in to stop a hemmorrhage. The doctor described the wounds. One was in his leg above the knee. The length of it was not described. He had another on the abdomen, another on his back, and one on his arm. All of them could have been made with some sharp instrument. The wound on the arm was about a quarter of an inch deep in the muscle—a superficial wound. The wound on the leg was also superficial and about one-eighth of an inch deep. The wound on the back was about four inches long and superficial throughout. The wound on the left side was an incised wound. The other wounds were superficial. The wound in the thigh or leg might have produced death in the absence of medical treatment.

On the whole record we are impressed that the evidence does not justify the verdict rendered. Pierson was given the highest penalty for an assault with intent to murder. The undisputed evidence shows that he was not the aggressor in the beginning of the fight, and the State's own evidence shows that the injured party began the attack on Starks. The evidence is conflicting as to the provocation. From all angles, it appears that Pierson entered the fight after Starks and Skinner became engaged. He was a friend of Starks, though there was no previous enmity between any of the parties. The weapon used by him was not a deadly weapon per se, and there is no description of it which characterized it as such. While one of the wounds appeared to have been serious, it was not a stab wound but a cut on the leg, and the seriousness, we infer from the doctor, was due to the fact that it might have caused excessive bleeding. The evidence of a specific intent to kill we regard as inconclusive. It is not to be inferred from the use of the weapon which was not per se deadly, nor does the manner of its use impress us as conclusively pointing to an intent to kill. The circumstances under which Pierson entered the fight are characteristic of an encounter which, if death had resulted, would have been manslaughter rather than murder.

Art. 1149 of the Penal Code reads thus:

"Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

See also Vernon's Texas Crim. Stat., Vol. 1, p. 720; Thompson v. State, 24 Texas Crim. App., 383; 5 L. R. A. (N. S.) p. 810; Vinson v. State, 55 Texas Crim. Rep., 495.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*