### ALEX FOLEY v. THE STATE.

No. 9282.   Delivered April 8, 1925.

Rehearing granted May 27, 1925.

1.—Murder, Evidence—Held Sufficient—To Sustain   Judgment.

There are no complaints of the ruling of the court upon the admission of evidence preserved by bills of exception. The evidence in the case is not such as would ordinarily lead one to expect a verdict assessing the death

penalty. We have failed to perceive any matter in the record of legal significance which would lead us to the conclusion that the trial accorded appellant was other than a fair one by an impartial jury.

ON REHEARING.

2.—Same—Facts Not Sufficient.

Upon a careful reconsideration of the record in this case, on rehearing we are constrained to hold that we were in error in our original opinion in holding the facts sufficient, in view of the extreme penalty assessed.

3.—Same—Charge of Court—Provoking Difficulty—Converse of Law.

Where the facts show without dispute that the deceased began the fatal difficulty, and are in such doubt as to those things relied on to show that the accused provoked the difficulty, and especially when a death penalty is inflicted, we feel that the rule stated in Pierson v. State, 93 Tex. Crim. Rep. 335 may be invoked in reversing the case. Also see Vernon's C. C. P., p. 689.

Appeal from the District Court of Lavaca County. Tried below before the Hon. Lester Holt, Judge.

Appeal from a conviction of murder; the penalty assessed at death.

The opinion states the case.

*Bagley & Kacir*, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Appellant is condemned to suffer death for the offense of murder.

He shot and killed Isidor Matejek, who was the keeper of a cold drinks establishment. Several eye-witnesses were called by the State. The deceased was a white man. There were several negroes and some white men in the deceased's place of business. The appellant and a companion entered and called for two bottles of soda water. After drinking them, appellant handed the deceased a piece of money and received some change, but claimed that it was not enough. A quarrel between the appellant and the deceased ensued. Appellant was ordered to leave the building. Failing to respond, the deceased got a stick about three feet long and which had the appearance of a broom handle. Appellant and his companion ran to the back door, where they had a conversation, after which the appellant returned, and in a loud voice and arrogant manner demanded his change. He was again ordered to leave, but replied that "he was not in a hurry to come in and would not be in a hurry to leave;" that the deceased was misled about hitting the appellant with a stick; "that he would not hit him with a stick." The stick in question was under the arm of the deceased at the time.

He took the stick in his hand and swung it at the appellant who fired his pistol twice killing the deceased. One of the State's witnesses was uncertain whether the deceased struck the appellant with the stick or not. Another witness for the State testified that the companion of the appellant advised him not to re-enter the place after he was ordered out. Appellant, however, re-entered and said that "he had come for his change and that he was going to have it." The deceased then put some money on the counter and said: "Here is your change. Take it and get out of here and stay out." Appellant replied: "I was not in any hurry about coming in, and I will not be in any hurry about going out." The order to get out was repeated several times by the deceased, and he finally struck the appellant with the stick. They were on opposite sides of the counter, and the appellant immediately fired.

According to the appellant, who testified as a witness in his own behalf, he had gotten a pint of whiskey from the deceased some hours before the homicide. Upon going to his home, he took several drinks of the whiskey. Hearing a noise on his premises, he got his pistol, went into the yard, and fired at a bottle on the fence. Having occasion to go on an errand, he got in his automobile, taking the pistol with him. Upon his return he stopped his car and together with the witness Clay entered the place of business of the deceased and bought some soda water. After drinking the soda water, he handed the deceased a dollar and asked for the change. The deceased said there was no change coming and ordered the appellant to leave, making a threatening gesture with the stick at the time. He and Clay ran out. Upon reaching the door, appellant told Clay that he was going to return and ask for his change; that he was entitled to it and knew that the deceased would give it to him. When he returned and asked for the change, the deceased put thirty-five cents in nickels upon the counter, and when the appellant reached for it, he was struck by the deceased with a stick which he had in his hand; that he was first struck upon the wrist and then upon the head. After he was struck the third time, he shot the deceased. Appellant claimed that the blows received wounded him and caused flood to flow. He also introduced some corroborative testimony to the effect that he had wounds upon him. One witness testified that after the homicide, appellant's wrist was swollen and appeared to have been bruised. This, however, was controverted by the State. There were two bottles in the appellant's automobile. One was full of whiskey, the other empty.

The court instructed the jury on the law of murder and manslaughter, including a specific charge on the phase of manslaughter which renders a blow causing pain or bloodshed adequate cause. He also charged on the law of self-defense and provoking the difficulty.

The issues raised by the evidence seem to have been clearly and adequately presented to the jury. There are no complaints of the rulings of the court upon the admission of evidence preserved by bills of exception.

The evidence in the case is not such as would ordinarily lead one to expect a verdict assessing the death penalty. Possibly the fact that the appellant was a negro and the deceased a white man may have had some bearing. However, in the absence of some tangible matter revealed by the record which would convey to this court information which would justify the conclusion that the verdict was affected by passion or prejudice, it would not be warranted in interfering with the verdict which has the sanction of the learned trial judge in whose presence the evidence upon which the verdict was based was given and who, in the light of the evidence, over-ruled the motion for new trial. We have failed to perceive any matter in the record of legal significance which would lead us to the conclusion that the trial accorded the appellant was other than a fair one by an impartial jury. The evidence warrants the con-clusion which appears to have been formed by the jury that the blows which the appellant received after his return were provoked by him, that after he had been given the change which he claimed was due him, his manner and his words were such as to provoke the deceased to make an attack; that they were so intended and made with the purpose of killing the deceased in the event he responded by striking the appellant with the stick.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In a forcible motion for rehearing, sup-ported by oral argument, appellant insists that this case should be reversed because the evidence falls short of that degree of con-clusiveness which should appear in any case wherein the death penalty is assessed. In view of this insistence and the fact that the extreme punishment allowed by law was inflicted by the jury upon the trial, we have carefully examined, analyzed and sifted, as best we can, the facts in this case.

Appellant is a negro. He was charged with killing a white man. Deceased kept a drink stand at which appellant seems to have been a frequent customer. On the night in question two white men went by deceased's place and were in it at the time of this homicide. A negro named Chester Clay claims also to have been in said place. All three testified for the State. In several material matters they corroborate each other, and in some, their testimony is contradictory. All agree that before appellant drew any weapon or fired any shot deceased twice assaulted him with a stick appearing to be either

a hoe handle or a broom handle, the testimony fixing it at two and one-half or three feet long and three to three and one-half inches in circumference.

It is not disputed that appellant and a companion were in the place and ordered two bottles of soft drinks. It is also agreed that when appellant gave deceased a silver dollar in payment that a disagreement arose as to whether deceased gave back to appellant the correct change. It seems agreed that deceased demanded that appellant pay for things had by the other negroes who had gone out. Appellant insisted that he had no connection with the other negroes and had only bought two bottles of soda and that he should only be held to pay for said two bottles. It is agreed that at this point deceased got a stick, struck at appellant and ordered him out and that appellant and his companion ran out of the room. They were heard talking on the outside and in a short time appellant returned saying that he had come back to get his change and was going to have it. Thereupon, according to all of the witnesses, deceased went to his money drawer, got the change and put it on the counter or table and as appellant went to take it up deceased struck him with the stick which he had under his arm up to that time, striking appellant on the side of the head, and that after this was done appellant drew a pistol and shot deceased who fell to the floor and died shortly. Two of the State witnesses testified that they saw nothing done and heard nothing said by appellant to cause deceased to assault him. No difference in opportunity to see and hear what was said and done on the part of these two witnesses and the other State witness, appears in the record. The remaining witness for the State claimed that appellant said to deceased when he came back into the room and demanded his change, "Somebody told you something that was not so when they told you you would hit me with that stick," and that appellant said several times to deceased that "You won't hit me with that stick," before deceased struck him. The other two witnesses for the State say they heard nothing of this kind.

The fact that deceased gave to appellant when he came back into the store after being run out the first time, the change claimed by appellant to be due him, seems to concede his right to the money so paid, and his consequent right to re-enter the building and ask for it. The State's theory evidently is that after being paid the correct change by deceased, appellant said words which provoked deceased to attack him. Two disinterested parties who were present said that appellant did nothing to provoke such attack. The credibility of each of these two witnesses is vouched for by the State who introduced them in making out its case. They are not shown to have been related or in anywise interested. One of these witnesses testified that when deceased gave appellant the change de-

ceased was mad and showed it in his tone and manner and that he told appellant to get out of his place of business and stay out, and then hit appellant with a stick across the shoulder or neck somewhere, and that after this was done appellant drew his pistol and fired. This witness said that on the examining trial when the facts were fresh in his mind he swore that "Between the time the change was laid down until Mr. Matejek hit the defendant or the darkey who stood before the bar the darkey did not say anything." He said that his testimony given then was true. This State witness also admitted that on the examining trial he testified, "There was no occasion, as far as I saw, for Mr. Matejek to strike the man who demanded the change from him, with the stick that he had in his hand." This fact the witness also affirmed on this trial to be true. This witness testified that appellant did not do anything from the time Matejek carried his change to him "to cause Mr. Matejek to strike him." He affirmed that appellant neither said nor did anything. Chester Clay, one of said witnesses for the State, also swore "Mr. Matejek went to the cash drawer, which is located on the counter in the front part of the building, and got the money out of the drawer and brought it back and laid it on the counter. Alex picks the money up and Mr. Matejek tells him to get out, and Mr. Matejek strikes Alex with the stick. Alex goes to the left hand pocket with his left hand and draws a gun and fires two shots." On cross-examination he affirmed the proposition that when deceased got the money he put it on the counter and that appellant picked it up, and then deceased struck appellant with the stick; that he struck him with the stick when he put the money down. This witness said that appellant did not say anything more than to ask for the money up to the time deceased struck him with the stick, and that he did not hear appellant say anything when deceased laid the money on the counter. He affirmed that he heard everything that was said.

The circumstances in evidence in this case would ordinarily be held sufficient to reduce a homicide to manslaughter. The learned trial judge properly told the jury that an assault and battery causing pain and bloodshed was deemed by our statute adequate cause to produce that condition of mind which would reduce a homicide to manslaughter. It thus appears that there being unquestionably an adequate cause to reduce the killing to manslaughter, as well as evidence of the mental condition of appellant as testified to by every witness who saw the difficulty, a verdict conformable to this theory should be reached unless the jury believed that appellant provoked the difficulty with the intention of causing the deceased to attack him and of using such attack as an excuse or justification for taking the life of deceased.

The State witness upon whose testimony the court predicated his charge on provoking the difficulty, said that when appellant came back into the room after his change, deceased had under his arm the stick with which he had run the two negroes out of the room. This witness also testified on direct examination that when deceased demanded that appellant pay more than he was willing to, that appellant told deceased that he was just paying for the two bottles that he drank and was not going to pay for what the other fellows bought and that after arguing this matter deceased ordered appellant out of building and went and got the stick which he punched at the two negroes and they ran out of the door. This witness also affirmed that deceased got mad in his argument with appellant. Referring to the statement attributed by him to appellant as being made to deceased, to-wit: ''Somebody told you something that was not so when they said you would hit me with that stick,'' witness said that deceased hit appellant shortly after this was said. He testified that appellant said this several times. Asked if on the examining trial he had not testified ''When this darkey came back he and Mr. Matejek were arguing about the change for soda water, and the darkey said to him, after Mr. Matejek had paid him his money which the darkey claimed, that, ''Somebody had told him something that was not so when he told him that he would hit him with the stick,' and that without any other reason Mr. Matejek reached over and hit him with the stick,'' he replied that he did so testify and that it was true. He was also asked if he did not say that after appellant was paid the money by deceased and made the remark above quoted, that without any other reason except said language deceased reached across the bar and struck appellant with the stick. To this the witness replied that it was true, that deceased reached across the bar and struck appellant with the stick and that this was all that was said before deceased did strike. This witness was asked if it was not true that when appellant came back into the room he said to deceased, ''Mr. Matejek, they told me that you would hit me with that stick if I would come back to get my change, and I told them it was not so,—that you would give me the right change.'' Witness said that he did not think that appellant said it that way, that he thought appellant said it as witness had already repeated it. If we may be pardoned an analysis of the testimony of this witness which seems to furnish the State its support for the theory of provoking the difficulty, upon which theory alone can a conviction for murder be based in this case; and bearing in mind that the language attributed by this witness to appellant upon which rests the proposition of provoking the difficulty is ''Somebody told you something that was not so when they told you you would hit me with that stick,'' and the further testimony of the witness on cross-examination that he did not think that what appellant said to

deceased was "They told me that you would hit me with that stick if I would come back to get my change, and I told them it was not so,—that you would give me the right change"; and in view of the fact that two other disinterested witnesses were standing by both of whom say they did not hear any such language used by appellant,— it seems to us that to permit the taking of human life as the result of a trial wherein the guilt of murder and infliction of the extreme penalty therefor seems to depend upon whether the accused said "They told you something that was not so" instead of "They told me something that was not so," would be to make the judicial taking of human life rest upon a very unsubstantial basis. The substitution of the one pronoun for the other would put a very different phase upon the statement made. If appellant said to deceased, evidently referring to a conversation had by him with his companion on the outside, that they told him something that was not so when they said if he came back in to get his change, deceased would hit him with the stick,—this would seem to be in consonance with what might reasonably be expected under the circumstances. To attribute to appellant the statement that "They told you something that was not so when they told you that you would hit me with that stick," seems a little unreasonable, and especially so in view of the fact that nothing in the record suggests that anyone had told deceased anything regarding whether he would or would not strike appellant with the stick.

The court's charge does not apply to the facts the converse of the law of provoking the difficulty, and had it done so a different result might have followed. Where the facts show without dispute that deceased began the fatal difficulty and are in such doubt on the question as to those things relied on to show that the accused provoked the difficulty, and especially when a death penalty is inflicted, we fell that the rule as stated in Pierson v. State, 93 Texas Crim. Rep. 242; Calhoun v. State, 214 S. W. Rep. 335, and cases cited in Vernon's C. C. P., p. 689, may be invoked in reversing the case.

The uncontradicted facts in this case so strongly support the proposition that there was anger on the part of deceased and that he was aggressor both in the original difficulty in running appellant and his companion out of the house, and in later striking appellant before the latter drew a pistol and fired a shot, that we are led to believe that this verdict does not reflect a fair, calm, deliberate judgment on the facts and are constrained to grant this motion for rehearing and send this case back for another trial. The taking of human life by an individual is a thing to be regretted and except in extreme and necessary cases, condemned. More to be regretted and condemned is the taking of human life through the process of a trial except in extreme cases. Such extreme case we are not satisfied has been made out by the facts in this record, and so con-

cluding, the motion for rehearing is granted, the affirmance set aside, and the judgment now reversed and the cause remanded.

*Reversed and remanded.*